IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NAGI TABET, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 10-CV-4606 |
| | ) |
| MILL RUN TOURS, INC., ET AL., | ) Judge Robert M. Dow, Jr. |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court are four motions to dismiss in two related cases, *Gvozden v. Lincolnwood, et al.*, Case No. 10-cv-4595, and *Tabet v. Mill Run Tours, Inc., et al.*, Case No. 10-cv-4606. In both cases, Defendant Stratton has moved to dismiss the claims against her. Also in both cases, the Village of Lincolnwood and Detective Stewart ("Lincolnwood Defendants") have moved to dismiss the claims against them. For the reasons stated below, in Plaintiff Tabet's case, Defendant Stratton's motion to dismiss [126] is granted and the Lincolnwood Defendants' motion to dismiss [106] is denied. Since the analysis is identical, the Court will enter substantially the same opinion in both cases.

**I.  Background**

According to Plaintiffs' amended complaints, certain Mill Run employees contacted Assistant State's Attorney Karyn Stratton at the Cook County State's Attorney's Office and alleged that Plaintiffs had "fraudulently and criminally converted money that belonged to Mill

Run to another company." Detective Stewart, a Lincolnwood Police Officer, was (at some point) advised of Mill Run's allegations. Stratton investigated Defendants' allegations by interviewing witnesses and reviewing documents. Stewart and Stratton interviewed Plaintiffs, and Stewart then "falsely reported" in her arrest report that Plaintiffs made "certain statements and admissions." Plaintiffs were arrested and tried. Plaintiffs were acquitted in May 2010.

In June 2010, Plaintiffs filed these civil cases in Cook County Circuit Court. Defendants removed the cases to federal court one month later on the basis of Plaintiffs' 42 U.S.C. § 1983 claims for false arrest. In addition to Plaintiffs' federal false arrest claims, Plaintiffs asserted a variety of state law claims, including claims for malicious prosecution, intentional infliction of emotional distress, breach of contract, and conversion. Defendants Mill Run Tours, Inc., Jimmy Daher, and Pierre Azzi ("Mill Run Defendants") and The Village of Lincolnwood and Detective Stewart ("Lincolnwood Defendants") moved to dismiss Plaintiff Gvozden's complaint in Case No. 10-cv-4595 and Plaintiff Tabet's complaint in Case No. 10-cv-4606. In separate opinions, the Court granted the motions in part. Relevant here, the Court denied the motions as to Plaintiffs' claims against the Lincolnwood Defendants for false arrest, intentional infliction of emotional distress, and malicious prosecution. Approximately three months after the disposition of Defendants' first motions to dismiss, and more than two years after Plaintiffs were acquitted of the criminal charges against them, Plaintiffs amended their complaints to include claims against Stratton.

In the current round of motions to dismiss, the Lincolnwood Defendants argue that the new allegations about Stratton's involvement in the investigation — in particular, that she led it — undermine Plaintiffs' claims that Defendant Stewart caused Plaintiffs to be arrested without probable cause, and thus that their federal claims should be dismissed under Rule 12(b)(6). For

2

her part, Defendant Stratton argues that Plaintiffs' claims against her should be dismissed under Rule 12(c) because they are barred by the statute of limitations or under Rule 12(b)(6) because they are barred by prosecutorial immunity.

**II.     Legal Standard**

The purpose of a Rule 12(b)(6) motion to dismiss is not to decide the merits of the case; a Rule 12(b)(6) motion tests the sufficiency of the complaint. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in his favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint

and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); cf. *Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole."). Rule 12(c) motions are reviewed under the same standard as Rule 12(b)(6) motions to dismiss. *Piscotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

**III.    Analysis**

    **A.    Defendant Stratton's Motions to Dismiss**

As to Defendant Stratton, Plaintiffs' amended complaints assert federal claims under § 1983 for false arrest in violation of the Fourth Amendment and state law claims for malicious prosecution and intentional infliction of emotional distress (IIED). Stratton argues that Plaintiffs' claims are barred by the statute of limitations. The period of limitations is an affirmative defense and "[c]omplaints need not anticipate defenses and attempt to defeat them." *Richards v. Mitcheff*, 969 F.3d 635, 637 (7th Cir. 2012). That said, it is well-established that "[a] plaintiff whose allegations show that there is an airtight defense has pleaded himself out court, and the judge may dismiss the suit on the pleadings under Rule 12(c)." *Id.*

*False Arrest.* In *Wallace v. Kato*, 549 U.S. 384, 397 (2007), the Supreme Court held that the statute of limitations for "a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." "The applicable statute of limitations for a § 1983 false arrest claim arising in Illinois is two years." *Brooks v. City of Chicago*, 564 F.3d 830, 832 (7th Cir. 2009). Plaintiffs were arrested in June 2008. See Case No.

4

10-cv-4595 [135 at ¶32]; Case No. 10-cv-4606 [105 at ¶32]. Plaintiffs first alleged that Defendant Stratton should be liable for false arrest in June 2012, four years later.

*Malicious Prosecution*. Under Illinois law, a cause of action for malicious prosecution accrues when the criminal proceeding on which it is based is terminated in the plaintiff's favor. See *e.g.*, *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 99 (2004); *Scott v. Bender*, 2012 WL 4458425, at *11 (N.D. Ill. Sept. 26, 2012). Under Illinois law, "[a]ctions for damages for an injury to the person, or for false imprisonment, or malicious prosecution [* * *] shall be commenced within 2 years after the cause of action accrued [* * *]." 735 ILCS 5/13-202. Pursuant to the Illinois Tort Immunity Act, however, most civil claims against government employees — including claims for malicious prosecution — are governed by a one-year statute of limitations. See 745 Ill. Comp. Stat. 10/8-101(a) ("No civil action * * * may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued."); *Jones v. Connors*, 2012 WL 4361500, at *5 (N.D. Ill. Sept. 20, 2012) (applying one-year statute of limitations to malicious prosecution claim and citing cases); see also *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) (§ 1983 claims are not subject to the shorter limitations period imposed by the Illinois Tort Immunity act, but "the one-year period applies to state-law claims joined with a § 1983 claim"). Plaintiffs were acquitted of the criminal charges against them in May 2010. Plaintiffs first alleged claims for malicious prosecution against Stratton in June 2012, more than two years later.

*Intentional Infliction of Emotional Distress*. Under Illinois law, IIED claims that are based on facts alleged in parallel claims for malicious prosecution accrue, like the claims for malicious prosecution, when state criminal proceedings are terminated in the plaintiff's favor.

5

See e.g., *Hobbs v. Cappelluti*, 2012 WL 4499227, at * 15 (N.D. Ill. Sept. 28, 2012); *Carroccia v. Anderson*, 249 F. Supp. 2d 1016, 1029 (N.D. Ill. 2003) (collecting cases). In Illinois, IIED claims are generally subject to a two-year statute of limitations. See 735 ILCS § 5/13–202; *Nance v. Rothwell*, 2011 WL 1770306, at *11 (N.D. Ill. May 9, 2011); *O'Leary v. Kaupas,* 2010 WL 4177264, at *3 (N.D. Ill. Oct. 19, 2010). But, as explained above, pursuant to the Illinois Tort Immunity Act, most civil claims against government employees are governed by a one-year statute of limitations. See 745 Ill. Comp. Stat. 10/8-101(a). *Thompson v. City of Chicago*, 2008 WL 780631, at *5 (N.D. Ill. Mar. 20, 2008) (one-year limitations period applied to IIED claim against government employee); see also *Williams*, 399 F.3d at 870. As noted above, Plaintiffs were acquitted of the charges against them in May 2010. Plaintiffs first alleged claims for IIED against Stratton in June 2012, more than two years later.

*Discovery Rule, Equitable Tolling, and Equitable Estoppel.* Plaintiffs concede that their claims against Defendant Stratton were filed after "the mere technical deadline[s] set forth in the applicable statutes of limitations." Case No. 10-cv-4606, Pl. Resp. Br. [138 at 6]; Case No. 10-cv-4595, [144 at 11] ("Plaintiff absolutely agrees that this case was not filed against Stratton within 2 years of her arrest or the finding of Not Guilty on all criminal charges."). Plaintiffs nevertheless maintain that their claims against Stratton are not time-barred because of the discovery rule, equitable tolling, and equitable estoppel.

The discovery rule states that a cause of action does not accrue until a plaintiff knows or should have known that she sustained an injury. See, e.g., *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004); *Thomas v. City of Chicago*, 2009 WL 1444439, at *2 (N.D. Ill. May 21, 2009). Plaintiffs argue that the discovery rule saves their claims against Stratton because, although Plaintiffs knew that she prosecuted them, they did not

6

know that she participated in the investigation until Defendant Stewart made that clear in her deposition on April 26, 2012. When Plaintiffs learned of Stratton's role, they promptly added her as a defendant.

As a preliminary matter, whether the discovery rule applies to false arrest claims under § 1983 has divided the district court. Compare *Johnson v. Garza,* 564 F.Supp.2d 845, 851 (N.D. Ill. 2008) (false arrest claim did not accrue until plaintiff became aware of misconduct that led to probable cause for plaintiff's arrest), with *Gordon v. Devine,* 2008 WL 4594354, at *5 n. 2 (N.D. Ill. Oct. 14, 2008) (*Wallace v. Kato* "adopted [a] bright-line test"); *Johnson v. Guevera,* 2007 WL 2608525, at *2 (N.D. Ill. Sept.5, 2007) ("The discovery rule simply has no applicability to false arrest claims."); *Ollins v. O'Brien,* 2006 WL 1519286, at *2 (N.D.Ill. May 26, 2006) (false arrest accrual is determined by a clear rule). But as the Court explained at length in *Thomas*, it agrees with courts that have held that *Wallace v. Kato* creates a clear rule governing the accrual date of a false arrest claim, and that, therefore, the discovery rule does not apply to federal false arrest claims. See 2009 WL 1444439, at *2-*3.

Even setting aside that critical consideration, the discovery rule would not salvage Plaintiffs' claims against Stratton. In deciding whether to apply the discovery rule, the Court conducts a two-part inquiry. "First, a court must identify the injury. Next it must determine the date on which the plaintiff could have sued for that injury." *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004) (citation omitted). In this case, Plaintiffs' injury occurred in June 2008 when they were arrested. See *Wallace v. City of Chicago*, 440 F.3d 421, 425 (7th Cir. 2006). Once Plaintiffs were arrested, they could have initiated their § 1983 actions. *Kato*, 549 U.S. at 390 n. 3. Thus, the discovery rule itself teaches that Plaintiffs' false arrest claims accrued no later than the date that they were held pursuant to legal process. Moreover, Plaintiffs' contention that they

7

could not have known that Stratton was involved in the investigation is belied by their complaints, which allege that Stratton interviewed Plaintiffs *and* Defendants before the prosecution. So, by deposition or otherwise, information about Stratton's involvement was available. Plaintiffs cannot invoke the discovery rule to cover their failure to collect that information and file a timely claim.

It is equally clear that the discovery rule cannot save Plaintiffs' state law claims for malicious prosecution and IIED. "[W]hen a statute of limitations does not begin to run until 'discovery,' the discovery referred to is merely discovery that the plaintiff has been wrongfully injured." *Fidelity Nat. Title Ins. Co. of New York v. Howard Savings Bank*, 436 F.3d 836, 839 (7th Cir. 2006) (applying Illinois law) (citing *Golla v. General Motors Corp.,* 657 N.E.2d 894, 898 (Ill. 1995); *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 633 N.E.2d 627, 630-31 (Ill. 1994); *Evans v. City of Chicago,* 434 F.3d 916, 934, n. 28 (7th Cir. 2006) (Illinois law)). For their state law claims, Plaintiffs knew they were wrongfully injured when they were acquitted, in May 2010. Once a plaintiff knows he is injured, the discovery rule does not delay accrual until he knows who injured him. "He has the limitations period to discover that, draft his complaint, and file suit." *Id.*

As mentioned, Plaintiffs also invoke the doctrines of equitable tolling and equitable estoppel. Equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). Equitable estoppel "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations." *Id.* at 450-51. Thus, the basic difference between the two doctrines is that equitable estoppel includes a requirement that the defendant

8

had some responsibility for the plaintiff's failure to comply with the statute of limitations. See *Fidelity Nat. Title Ins. Co. of New York*, 436 F.3d at 839.

In this case, the difference between the two doctrines is immaterial; Plaintiffs invoke both using the same argument: Plaintiffs did not learn of Stratton's investigatory role until Stewart's deposition in April 2012. Prior to that, Plaintiffs insist that they could not have known about her investigatory role because of the way that Stratton questioned Stewart during the grand jury proceedings, where Stratton repeatedly asked Stewart "did your investigation show … ?" Plaintiffs' theory is that because Stratton's questions asked Stewart about *her* (Stewart's) investigation, Plaintiffs were led to believe that Stratton played no investigatory role whatsoever. Add to that the absence of an indication in the criminal records or in the pleadings in this civil case that Stratton was an investigator, and Plaintiffs believe that they should be excused for bringing their claims against Stratton when they did.

No matter how generously the Court reads the factual allegations in Plaintiffs' complaints and briefs, it is plain that that their tolling and estoppel arguments cannot prevail. First, Stratton's questions to Stewart about her investigation are not tantamount to an assertion by Stratton that she had no investigatory role. After all, to ask Stewart about her investigation is not to exclude the possibility that Stewart had assistance or that there were other investigators. Plaintiffs ignore this and repeatedly assume that the questions about "your investigation" imply that Stewart was the *only* investigator. Second, Stratton's statements were made before the grand jury, not to Plaintiffs. Plaintiffs do not allege that Stratton made any statements to them that could be construed as an attempt to mislead them. Third, Plaintiffs' complaints allege that Stratton interviewed them, and Plaintiff Gvozden's complaint actually asserts that "Defendants Stewart and Stratton interviewed Gvozden *as part of the investigation*." Case No. 10-cv-4595,

9

[135 at ¶29] (emphasis added). It is not plausible that the form of Stratton's questions before the grand jury or the absence of a statement about her investigatory role in written discovery overwhelmed Plaintiffs' own experiences of Stratton's involvement in the case. Fourth, Plaintiffs allege that Stratton's investigatory activity included interviewing the Mill Run Defendants. Those Defendants could have been deposed about what they told Stratton and when. Fifth, knowing that Stratton was involved in their allegedly wrongful arrest and prosecution, Plaintiffs could have taken Stratton's deposition to learn about her involvement in the case prior to their arrest and indictment, and that could have been done without naming her as a defendant.

In sum, Plaintiffs have not shown that there is a basis for applying the discovery rule, equitable tolling, or equitable estoppel. Accordingly, Plaintiffs' claims against Stratton are barred by the statute of limitations.

### B. Lincolnwood Defendants' Motions to Dismiss

This is the second time that the Lincolnwood Defendants have moved to dismiss Plaintiffs' complaints because, they believe, Plaintiffs have not plausibly alleged that Detective Stewart lacked probable cause to arrest Plaintiffs. In ruling on their first motion (as to Plaintiff Gvozden), the Court explained:

> Whether an officer has probable cause to arrest depends on the requirements of the applicable state criminal law. [*Pourghoraishi v. Flying-J,* 449 F.3d 751, 761 (7th Cir. 2006)] (citing *Williams v. Jaglowski,* 269 F.3d 778, 782 (7th Cir. 2001)). Thus, as long as an officer has probable cause to believe that an individual "has committed even a very minor criminal offense in his presence," the officer may arrest the offender without violating the Fourth Amendment. *Atwater v. City of Lago Vista,* 532 U.S. 318, 354 (2001). In this case, the facts and circumstances known to the Lincolnwood Defendants at the time of Plaintiff's arrest appear to support a reasonable belief that Plaintiff had committed a crime. Plaintiff alleges

that Defendant Daher contacted Officer Stewart and complained that Plaintiff had engaged in fraudulent and criminal activity. One way of reading Plaintiff's complaint is that, based on this statement, Officer Stewart arrested Plaintiff.

However, Plaintiff also alleges that Officer Stewart fabricated a confession or "admission" by Plaintiff. If Plaintiff's arrest was based solely on the information presented by the Mill Run Defendants to Officer Stewart, and the alleged fabrication came after her arrest, then Daher's statements likely gave Stewart probable cause to arrest Plaintiff. See *Woods v. City of Chicago,* 234 F.3d 979, 987 (7th Cir. 2000) ("So long as a reasonable credible witness or victim informs the police that someone has committed a crime, the officers have probable cause to place the alleged culprit under arrest."); *Grimm v. Churchill,* 932 F.2d 674, 675 (7th Cir. 1991) ("As we have previously held, [w]hen an officer has received his information from some person—normally the putative victim or an eye witness— who it seems reasonable to believe is telling the truth, he has probable cause.") (internal quotations omitted). Plaintiff may still have a state law malicious prosecution claim against the Lincolnwood Defendants (based on the alleged fabrication), but Plaintiff's § 1983 claim against Officer Stewart would be foreclosed. *However, if the alleged fabrication was prior to the arrest and, in conjunction with Daher's statements, served as the basis for probable cause for Plaintiff's arrest, then Plaintiff may have a viable § 1983 claim. Discovery on the actual timeline of events surrounding Plaintiff's arrest, questioning, the signing of the criminal complaint, and the Grand Jury indictment should shed light on these issues.* See [*Carey v. K-Way, Inc.*, 728 N.E.2d 743, 748 (Ill. Ct. App. 1st Dist. 2000)] ("The determination of whether a defendant's conduct constitutes an actual request that the plaintiff be arrested, encouragement for the plaintiff to be arrested or the mere giving of information must be made on a case-by-case basis"). On the basis of the allegations in the complaint, Plaintiff has stated a plausible § 1983 claim against the Lincolnwood Defendants.

Case No. 10-cv-4595, [43 at 20-21] (emphasis added, footnote omitted); 2011 WL 1118704, at *11 (N.D. Ill. Mar. 28, 2011).

In their second motion to dismiss, Lincolnwood Defendants argue that Plaintiffs' allegations about Stratton's leading role in the investigation negate their claims against Detective Stewart. Defendants' argument is without merit. In addition to the new allegations about Stratton's role, Plaintiffs' amended complaints still contain the same critical factual allegations

11

that the Court previously determined to be sufficient to state a false arrest claim. Specifically, Plaintiffs' amended complaints still allege that (1) based on information provided to Stewart and Stratton, Defendants Stewart and Stratton interviewed Plaintiffs; (2) Defendant Stewart "falsely reported" in her arrest report that Plaintiffs "made certain statements and admissions"; (3) Plaintiffs did not make the statements and admissions in Stewart's arrest report; and (4) based on the statements of Mill Run Defendants *and the actions of Stewart and Stratton*, Plaintiffs were arrested and prosecuted. Case No. 10-cv-4595, [135 at ¶¶29-32]; Case No. 10-cv-4606, [105 at ¶¶29-32].

In other words, looking at Plaintiffs' complaints in a light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, Plaintiffs still allege that Stewart fabricated "certain statements and admissions" that caused them to be arrested and charged. The fact that Plaintiffs now believe that Stratton also was involved does not eliminate their false arrest claims against Stewart. That theory may restrict their arguments going forward, but it does not negate their basic claims; the alleged fabrication may still have caused the arrest, and thus Plaintiffs are still plausibly alleging that the fabrication led to Plaintiffs' arrests without probable cause. Lincolnwood Defendants do not argue that there is a basis for dismissing the state law claims if Plaintiffs' false arrest claims survive. Accordingly, Lincolnwood Defendants' motions to dismiss are denied.

One final note: Lincolnwood Defendants argue that Stewart is entitled to absolute immunity against § 1983 claims based on her grand jury testimony. *Rehberg v. Paulk*, 132 S.Ct. 1497, 1506 (2012) ("[G]rand jury witnesses should enjoy the same immunity as witnesses at trial. This means that a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony."). There is no dispute about that, nor could there be; Plaintiffs agree

that Stewart would be entitled to absolute immunity from claims based on her grand jury testimony, and they deny ever having made claims based on that testimony. See Case No. 10-cv-4595, [115 at 9-10]; 10-cv-4696, [116 at 7-8].

**IV.     Conclusion**

For the reasons stated below, Defendant Stratton's motion to dismiss [126] is granted and the Lincolnwood Defendants' motion to dismiss [106] is denied.

Dated: March 15, 2013                          _____
                                                                Robert M. Dow, Jr.
                                                                United States District Judge